NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0189n.06
Filed: April 9, 2008

Case No. 07-3416

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PAUL MEDLEN; SALLY MEDLEN, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ESTATE OF MYLES MEYERS; | ) | DISTRICT OF OHIO |
| DAIMLERCHRYSLER CORP., and THE | ) | |
| WACKENHUT CORP., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| ———————————————— | ) | |

**BEFORE:  BOGGS, Chief Judge; BATCHELDER, and GRIFFIN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**  Plaintiffs Paul and Sally Medlen[1] appeal a summary judgment order dismissing their claims of employer intentional tort, negligence, and common law battery against DaimlerChrysler Corp., Wackenhut Corp., and the Estate of Myles Meyers ("Estate"), respectively.  Because we find no basis for federal jurisdiction, we vacate the district court's judgment, and remand the case to the district court with instructions that it be remanded to state court.

## I.  BACKGROUND

Medlen's claims all arise from a January 26, 2005, shooting incident at the DaimlerChrysler

---

[1]For the sake of simplicity, we will refer only to Paul Medlen ("Medlen").  Sally Medlen's only claim is for loss of consortium and is derived from her husband's claims.

plant in Toledo, Ohio, at which Medlen was employed. On that day, Myles Meyers, one of Medlen's co-workers, entered the plant with a shotgun concealed under his coat and proceeded to open fire. Before taking his own life, Meyers killed one person and injured two others, including Medlen.

On April 5, 2005, Medlen filed suit in the Lucas County, Ohio, Common Pleas Court. For our purposes, the complaint alleged four causes of action. The first was a common law battery claim against the estate of Meyers, the gunman, for the injuries Medlen sustained in the shooting. The second and third claims were employer intentional tort claims against DaimlerChrysler Corp., essentially alleging that DaimlerChrysler was responsible for Medlen's injuries because it failed to protect Medlen from Meyers, and because its security was not adequate to keep guns out of the plant. The fourth claim was a negligence claim asserted against Wackenhut Corp., the company with which DaimlerChrysler contracted for security services at the plant.

On May 4, 2005, Daimler filed its Notice of Removal to the United States District Court for the Northern District of Ohio. On August 30, 2005, Plaintiffs moved the district court to remand the case to the common pleas court. The district court denied Plaintiffs' motion on December 6, 2005, finding that one of Medlen's claims would require the interpretation of DaimlerChrysler's collective bargaining agreement ("CBA"), and that federal question jurisdiction was therefore proper under the doctrine of complete preemption. *Medlen v. Estate of Meyers*, 2005 U.S. Dist. LEXIS 33546.

After extensive discovery, DaimlerChrysler and Wackenhut each moved for summary judgment. The district court granted both motions, holding that Wackenhut did not have, or breach, a duty to Paul Medlen, and that plaintiffs failed to demonstrate a genuine issue of material fact regarding DaimlerChrysler's having actual knowledge that (1) harm at the hands of Meyers was a substantial certainty, or (2) security measures at the plant were so inadequate that harm was a

2

substantial certainty.  This timely appeal followed.

## II.  ANALYSIS

"Every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).  Thus, we make a de novo inquiry into subject matter jurisdiction, and that inquiry is appropriate regardless of whether or to what extent the lower court or the parties have addressed the issue.  *See, e.g., Greater Detroit Recovery Authority v. EPA*, 916 F.2d 317 (6th Cir. 1990).  Because the district court erred in finding federal question jurisdiction under the doctrine of complete preemption, and because the parties lack the requisite complete diversity to establish diversity jurisdiction, we must vacate the district court's judgment and instruct that this case be remanded to state court.

### A.  Complete Preemption

DaimlerChrysler and Wackenhut invoke, as their predicate for removal, the district court's original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Generally, this "federal question" jurisdiction is governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Potential defenses, including a federal statute's preemptive effect, do not provide a basis for removal. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Caterpillar*, 482 U.S. at 393; *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10, 12 (1983).  Thus, because a plaintiff is the master of his complaint,

he can generally choose to avoid federal jurisdiction by asserting only state law claims. *Caterpillar*, 482 U.S. at 398-99; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 727-28 (6th Cir. 2004); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc).

All of Medlen's claims are based entirely on state-law theories of recovery — battery, negligence, and employer intentional tort — and under the well-pleaded-complaint rule, the face of this complaint presents no basis for federal question jurisdiction. *Caterpillar*, 482 U.S. at 392. Nevertheless, defendants argue and the district court agreed, that at least one of these claims is completely preempted by § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, and thus federal question jurisdiction is proper under the "complete preemption" doctrine.

The "complete preemption" doctrine is an exception to well-pleaded-complaint rule. *Beneficial Nat. Bank,* 539 U.S. at 8. This narrow exception applies where "Congress [has] so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins.*, 481 U.S. at 63-64. Section 301 of the LMRA is one of the few statutes relative to which complete preemption has been recognized. *See, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-11 (1985); *Avco Corp. v. Machinists*, 390 U.S. 557 (1968); *DeCoe v. GMC*, 32 F.3d 212 (6th Cir. 1994).

Section 301 provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Thus, the statute serves to preempt only state-law claims that are, in form or effect, suits for violation of contracts between an employer and

4

a labor organization, that is, suits in which the claims are "founded directly on rights created by collective-bargaining agreements," or are "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394. The preemptive effect of § 301 applies to both state-law contract and tort claims. *Allis-Chalmers*, 471 U.S. at 211.

As the Supreme Court took pains to explain in *Caterpillar*, there is a significant difference between federal preemption raised as a defense to allegations in a plaintiff's complaint and complete preemption that can serve as a basis for removal of a case from state court to federal court. First, the Court pointed out that "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 392. The Court went on to explain the complete preemption doctrine: "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. The Court observed that the doctrine of complete preemption is applied "primarily in cases raising claims preempted by § 301 of the LMRA." *Id.* Turning to Caterpillar's assertion that the employees' state-law breach of contract claims in that case were in fact completely preempted § 301 claims, the Court held that they were not. The Court emphasized that "a plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Id.* at 396 (citing *Allis-Chalmers*, 471 U.S. at 212). Finally, the Court emphasized as well that "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are

removable to federal court." *Id.* at 398.

This circuit has repeatedly held that complete preemption under § 301 does not apply to state-law claims that are independent of the CBA. *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). We have made it clear that to be completely preempted, the claim must either (1) require interpretation of the terms of the CBA, or (2) assert rights created by the CBA and not by state law. *Id*. *See also Alongi*, 386 F.3d at 727-28 (the fact that a claim may ultimately be preempted by federal law has no bearing on whether jurisdiction exists under complete preemption); *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (quoting *Caterpillar*).

Here, only Medlen's claims of employer intentional tort asserted against DaimlerChrysler could arguably involve a CBA. Neither of these claims is grounded on the CBA; rather, each of them is entirely a state-law intentional tort claim. Each may be completely preempted, therefore, only if it requires interpretation of the terms of the CBA.

To prove an employer intentional tort under Ohio law, a plaintiff must prove intent and causation. *Eilerman v. Cargill, Inc.*, 195 Fed. Appx. 314, 317-18 (6th Cir. 2006); *see also Raines v. Rubbermaid, Inc.,* 112 Ohio App. 3d 384, 389 (Ohio Ct. App. 1996). To prove intent, the plaintiff must demonstrate:

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
>
> (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
>
> (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno's, Inc.*, 59 Ohio St. 3d 115 (Ohio 1991) (syllabus, ¶1). To prove causation, the plaintiff

must demonstrate "a nexus between the act or omission of the employer and [the plaintiff's] injury." *Raines*, 112 Ohio App. 3d at 390.

In his first count of employer intentional tort, Medlen alleges that DaimlerChrysler required him to work at the plant despite knowledge that Meyers had threatened or posed a threat of physical harm to other employees, and that such harm was substantially certain to occur. This count focuses on whether DaimlerChrysler was substantially certain that Meyers would harm employees within the plant and, if so, still failed to protect the employees from this harm. DaimlerChrysler does not point to any provision in the CBA that addresses the circumstance in which an employee in the workplace poses a threat to other employees. Moreover, this count turns entirely on questions of fact, none of which requires interpretation of the CBA. Where a claim turns entirely on questions of fact, and is not directly connected to the terms of the CBA, the claim is not preempted. *Valinksi v. Detroit Edison*, 197 Fed. Appx. 403, 410 (6th Cir. 2006) (comparing cases).

Defendants attempt to escape this conclusion by arguing that the CBA must be consulted to determine what disciplinary or preventive measures DaimlerChrysler was permitted to take against Meyers. However, the factual determinations that are required to resolve Medlen's claim are whether (1) DaimlerChrysler was substantially certain that Meyers would harm employees within the plant, (2) DaimlerChrysler failed to protect the employees from this harm, and (3) DaimlerChrysler's failure resulted in injury to Medlen. Any disciplinary parameters within which DaimlerChrysler was required to operate as a result of the CBA would be a defense to this claim, and the fact that a defendant may raise a defense necessitating the interpretation of a CBA is not enough to trigger the "complete preemption" doctrine. *Alongi*, 386 F.3d at 727-28.

Nor does complete preemption apply to Medlen's second count, in which he alleges that

7

DaimlerChrysler required him to work at the plant despite its knowledge that its failure to provide adequate security measures to prevent weapons from being brought into the plant would create a dangerous condition within the plant from which harm was substantially certain to result, and that as a direct result of DaimlerChrysler's intentional conduct, Medlen was injured. The district court found this count completely preempted because it agreed with DaimlerChrysler that interpretation of the CBA's Article XIII— which governs "Health and Safety" issues, and creates a Joint Safety Committee that is responsible for determining whether health, sanitary, and safety conditions are met in the plant — would be necessary to determine whether the plant's safety measures were adequate. But we find nothing in the record to support this view. To the contrary, all evidence in the record indicates that security services at this DaimlerChrysler plant were governed by a contract between Wackenhut and DaimlerChrysler, and neither the Joint Safety Committee, the CBA in question, nor any other facet of collective bargaining impacted this contract. For example, Stephen McClain, DaimlerChrysler's security manager, stated that after the shooting incident at issue here, DaimlerChrysler unilaterally changed the way the security cameras recorded ingress and egress at the plant. This is precisely the type of security concern Medlen challenges, and, to the best of McClain's knowledge — a matter not disputed by DaimlerChrysler or Wackenhut — neither the union nor the Joint Safety Committee was consulted about this change. There simply is no basis in this record upon which to find that Medlen's claims necessitate the interpretation of the CBA.

Accordingly, because Medlen's claims are grounded wholly in Ohio employer intentional tort law and not in the CBA, and because resolution of those claims will not necessitate an interpretation of the CBA, no federal question jurisdiction exists under the complete preemption doctrine or otherwise.

8

## B. Diversity Jurisdiction

As an alternative basis for federal subject matter jurisdiction, Wackenhut and DaimlerChrysler assert diversity jurisdiction, arguing that at the time Medlen filed his complaint, there was no Ohio defendant. We conclude, however, that under Ohio law the Estate was a properly named defendant at the time Medlen filed his complaint, and Wackenhut and DaimlerChrysler cannot establish diversity jurisdiction.

Diversity jurisdiction exists under 28 U.S.C. § 1332 where the amount in controversy exceeds $75,000 and there is complete diversity between the plaintiffs and defendants, i.e., "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the amount in controversy is not contested, and both DaimlerChrysler and Wackenhut are incorporated and maintain their principal places of business outside of Ohio, the state of which Medlen is a citizen. Thus, as to only these parties, complete diversity exists. The issue is whether Medlen's claim of common law battery against the Estate, an Ohio citizen for diversity purposes, *see* 18 U.S.C. § 1332(c) ("The legal representative of the estate of a decedent shall be deemed a citizen only of the same state as the decedent.") destroys this complete diversity. We conclude that it does.

The difficulty with regard to this issue arises from the fact that when Medlen filed his complaint in state court on April 5, 2005, the Estate was not yet a legal entity as a matter of Ohio law. Under Ohio law, an Estate is "open," and thus a legal entity, on the "date of the issuance of letters testamentary or letters of administration and the appointment of an administrator or executor." *Eger v. Eger*, 314 N.E.2d 394, 400 (Ohio Ct. App. 1974). Under this standard, the Estate of Myles Meyers was not opened until July 1, 2005, which was after the Notice of Removal was filed on May

9

4, 2005. Process was not served on the Estate until August 23, 2005. DaimlerChrysler and Wackenhut argue that, because the Estate was not a legal entity at the time the complaint was filed, it was not a party for diversity purposes, and thus diversity jurisdiction existed. We disagree, as we shall explain.

To determine whether the Estate was a proper party with the capacity to be sued, we must look to Ohio law because it is "the law of the State in which the district court is held . . . ." Fed. R. Civ. P. 17(b) (2005). Ohio law is not completely settled in this area, so we must predict how the Supreme Court of Ohio would rule on the issue. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys.*, 249 F.3d 450, 454 (6th Cir. 2001). We must consider all relevant data available to us, including the decisions of the Ohio appellate courts, and we should not disregard those decisions unless "we are presented with persuasive data that the [Supreme Court of Ohio] would decide otherwise." *Id*.

Ohio appellate courts appear to recognize that a putative estate may be sued prior to its official opening: "[i]f the estate does not exist when the complaint was filed, the plaintiff has one year from filing the complaint to force the establishment of an estate." *Sorrell v. Estate of Datko*, 770 N.E.2d 608, 612 (Ohio Ct. App. 2001); *see also Wells v. Michael*, 2006 WL 3199281, at *4 (Ohio Ct. App. Nov. 7, 2006) (quoting *Sorrell*); *Korn v. Mackey*, 2005 WL 1322713, at *4 (Ohio Ct. App. May 27, 2005) (same); *Whitt v. Hayes*, 2003 WL 21040281, at *4 (Ohio Ct. App. May 6, 2003) (same). Although this authority is all in the context of Ohio's savings statute — dealing with statute of limitation issues — and all of the actions were dismissed for failure to serve the estate within the one-year period, it is nevertheless clear from this line of cases that an unopened estate is a properly named defendant so long as it is opened and served with process within one year of the filing of the complaint.

10

This one-year time limitation is derived from the Ohio Rules of Civil Procedure, which provide that service of process must be "obtained within one year from . . . filing upon a named defendant . . . ." Ohio Civ. R. 3(a). However, where, as in this case, service of process has not been perfected prior to removal to federal court, such service is governed by the Federal Rules of Civil Procedure. 28 U.S.C. § 1448; Fed. R. Civ. P. 81(c). Federal Rule 4(m) allows a plaintiff 120 days after a complaint is filed in federal court to complete service. This Rule has been interpreted to give plaintiffs in removed cases 120 days after the date of removal to complete service. *Baumeister v. N.M. Comm'n for the Blind*, 409 F. Supp. 2d 1351, 1352 (D.N.M. 2006) (citing *Ritts v. Dealers Alliance Credit Corp.*, 989 F. Supp. 1475, 1478 (N.D. Ga. 1997) (and cases cited therein)). Medlen's August 23, 2005, service on the then-opened Estate was well within both one year of the filing of the complaint on April 5, 2005, and 120 days of the May 4, 2005, Notice of Removal, and the Estate, therefore, was a properly named defendant at the commencement of the action.

Because the Estate was a properly named defendant at the commencement of the action and continues as such today, and because the Estate and plaintiff Medlen are both citizens of Ohio, DaimlerChrysler and Wackenhut cannot establish the complete diversity required under 28 U.S.C. § 1332. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 575 (2004) ("[w]here there is *no* change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit" (quoting *Connolly v. Taylor*, 2 Pet. 556, 565, 7 L. Ed. 518 (1829)).

### III. CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court, and **REMAND** this matter to the district court with instructions to remand the case to state court.

11